2-15-0677 David E. Hancock, plaintiff's appellant, v. Village of Itasca Unusual Appropriations, Defendant Perlini Arguing on behalf of the plaintiff's appellant, Attorney Mr. Thomas S. Raja-Friedman Arguing on behalf of the defendant's client, Attorney Mr. Charles E. Harris Are both sides ready to proceed? Yes. You may proceed when you're ready. Thank you. May it please the court, opposing counsel, my name is Tom Raja and I represent Officer David Hancock, the appellant plaintiff in this matter. This case comes before the court on a complaint for benefits for Officer Hancock under the PSEBA statute, the Public Safety Officers Benefit Act statute, requesting health insurance benefits as a result of a catastrophic injury he sustained as a result of his employment as a police officer in the Village of Itasca. As your honors may be aware, the PSEBA statute consists of really two parts when it comes to the health insurance benefit for catastrophic injuries, Section 10A and Section 10B. 10B is really the causation factor is whether or not the injury occurred as part of a response to an emergency call or criminal act of another. That part of this case is not in dispute. And in fact, the majority of all of the facts in this case are not in dispute either. This case comes on a decision of the circuit court on cross motions for summary judgment. So essentially the parties are both saying we agree with the facts of the case. With respect to my client, we don't agree with the results of how the court ruled on summary judgment. Would you agree we're not bound by your agreement on the facts? We could still find that there's an issue of fact with regard to the onset of the catastrophic injury? I would agree with that, your honor. We could find that the trial court either erred or was correct? Yes, I would agree with that statement. But I think in this case the facts are pretty, I think it's pretty simple. In starting in April 10th of 1992, Officer Hancock was injured as a result of receiving a gunshot blast to his right hand. He was in pursuit of a suspected bank robber at the time. It was a shootout wherein he was injured. As a result of that injury, however, Officer Hancock was able to return to work in 1994, continued to work his employment through 2000. On January 22nd of 2000, he was involved in responding to a motorist assist call where his squad car was hit. He again sustained a contusion to his right hand. Later in that year, November of 2000, he was again in pursuit of a fleeing suspect as a result of a traffic stop where he wasn't able to discharge his weapon because of the prior injuries that he had sustained to his right hand. He sought medical treatment. The doctors indicated he could not return to work because of his right hand injury. Ultimately, he applied for a line-of-duty disability pension with the Itasca Police Pension Board. In granting that line-of-duty pension, didn't the pension board reference the 92 shooting? They did, Justice Burke. They indicated that the disabling injury was the result of the 1992 injury. However, I would point out that although he was injured in 1992, he continued to work up until 2000. As cited in the briefs, the effective date of the PSEBA statute was 1997. So even after the effective date of the act, Officer Hancock continued to work in a full unrestricted capacity up until those 2000 injuries that I had told you about. So the injury didn't become catastrophic until he was no longer able to work. And we know that based on Illinois Supreme Court cases referring to PSEBA where they said catastrophic injury is when it's a career-ending injury, and that is when the pension board decides that this is a line-of-duty disability. That occurred in 2001. And applying statutory construction to this case and applying the plain, ordinary meaning to Section 10A here and not rendering any of the words in that statute superfluous, you have to look at the plain language of the statute. It says an employer who employs a law enforcement officer on or after the effective date of the act suffers a catastrophic injury. So the legislature is very clear that you have to suffer a catastrophic injury. When you read the brief and the arguments of opposing counsel, they leave catastrophic out. They say he suffered an injury in 1992. Therefore, it was before the effective date of the act. Therefore, you can't award benefits under PSEBA. That would eliminate the word catastrophic in the plain, ordinary meaning of the statute. So effectively, to apply the statutory construction here in the appropriate way, you can't just leave out catastrophic. The injury did not become catastrophic until such time that it was rendered career-ending. It's kind of like Derrick Rose could play until the injury got so bad he had to take him off the court. Exactly. And that's what happened here. Everybody knows he had an injury but became catastrophic when he decided he couldn't play. That's why I like hacky judges. Those guys just keep playing no matter what. You know, can you talk about the delay here? I'm sorry? The delay in bringing the action. Yes. As you've seen in the briefs, I first argue that the appellee has waived that argument by the fact that they didn't cross-appeal that issue here. Judge Whedon was very clear that she felt the discovery rule applied with respect to both the statute of limitations and the latches argument. And that was not appealed by the village. Therefore, we think waiver applies. And I cited cases with respect to that in my brief. Really, they can't cross-appeal if they receive everything that they asked for in the summary judgment, correct? That's what the case law says. However, they did not receive everything they asked for. They received a full dismissal. That's what they were seeking in summary judgment was a full dismissal, correct? The case was dismissed but not on everything they asked for it to be dismissed on. My reading of the case law, Justice, is that if they don't appeal an issue that was adverse to them, that they have waived that right to do that before Your Honors. And they certainly, I mean, twice Judge Whedon said on a motion to dismiss, said no, the discovery rule applies. And your statute of limitations and latches argument does not apply. And that's at C-303 of the record. And then also on summary judgment, she said the same thing. I would apply the discovery rule here and would not give any merit to the statute of limitations and latches argument. And the reason she came to that conclusion was because, first and foremost, Officer Hancock had applied for the placebo benefit in 2001. At the same time, he was applying for the line of duty disability. At that time, the employer told him, you're not entitled to it. Your injury predates the act. Then again, after he was awarded the line of duty disability in 2003, his counsel at that time had asked again for the placebo benefit, citing to the Crowley decision. The Illinois Supreme Court saying we're entitled to the benefit. And there was no response from the employer. And at that point, shouldn't he have brought an action? Well, at that point, he was still under the assumption that maybe the employer is right here, that I don't have a valid claim to it because my injury predated the act. And, you know, certainly you have to have a reasonable basis if you're going to bring a lawsuit. And the employer never, what's more important here, the employer never responded to the 2003 request for the benefit. Had the employer done so and said, no, you're not entitled to it either because it predates the act or because we don't think your injury was responsive to an emergency or whatever, at that point then I think that latches may have been a valid argument because he had to bring a mandamus action or written. But he's paying for his own benefits out of his own pocket for him and his family after his lawyer tells him he's entitled to the benefits when he asks for the benefits and you get no response. I mean, how is latches not, how does latches not attach? He knows he's got a possible right of action and he just waits. Well, he doesn't just wait, Judge. What he does is he asks for it from the employer and they do nothing. They do nothing. Okay. For 10 years? Yes. Well, and the reason being, again, is because at that time the law wasn't clear as to what the effective date the employer would be responsible to pay the benefit. Whether it was the date of injury or whether it was the award of the pension board. That was made clear for the first time admittedly by the appellate in the NOAC decision and that's December 1st of 2011. But the statute was on the books in 97. The arguments that you're making now about the statute saying catastrophic injury as opposed to just injury were available to you then looking at the plain, as you're arguing, the plain language of the statute. You're telling us that this statute is unambiguous, the plain language says that it's when the catastrophic injury occurs. That's the same before NOAC and after NOAC. I agree with you, Justice Burke. However, as you can see, legal minds are still coming before the court saying, no, it's the date of injury. And there was no judicial opinion saying what was true and what wasn't. I certainly believe back then it was and now it was. I wasn't representing Officer Hancock back then. But as you can see, even the appellee's going to come before you today and say the statute's not clear, that you should apply it this way and it's the date of injury. Even after the NOAC decision in 2011. So, I mean, certainly the reasonable minds can differ. And an individual like Officer Hancock, who's not studying the law and doesn't know what it is, would have no reason not to rely upon what he's being told by his employer that, hey, it's the date of injury. And that's the argument that they also made to his counsel back in 2003, I'm sorry, in 2001, saying it's the date of injury. You can't bring a lawsuit against us, otherwise it would be frivolous. So, I mean, I think he had a reasonable basis to know that he had a cause of action when the Illinois Supreme Court said the employer's obligation to pay the benefit attaches when the line of duty disability is granted. And that was in December of 2011. Is that the only time it attaches? What if your client was, for whatever reason, decided never to seek a pension? Or maybe a client, just a hypothetical individual who clearly is injured on the job, who clearly is catastrophic, and decides never to go for a line of duty pension. But they're still under procedure, entitled to have their benefits paid if it's a catastrophic injury, suffering a line of duty. That's a great question. And there are real-life examples of that going on. I actually have a couple cases where you're dealing with IMRF and other pension systems. And their determination of what is a line of duty disability is clearly different than the downstate Article III and Article IV. But I think what you can look to is both NOAC, as to when it attaches to the employer, and now the most recent decision in healing that was decided by Illinois Supreme Court in 2015. It says it's when the injury is career-ending. It's a post-employment benefit, but when the injury is career-ending, that's when it attaches. So, you know, with respect to, like, an IMRF department, where the line of duty disability standard may be very high to meet, if the injury is significant enough that it ends their career, it's my belief, based on planning and statute, that they would still be able to bring that benefit, even without a line of duty disability. So it's separate and apart from NOAC? No, I don't believe so. I think it would be in congruence with NOAC. Because what NOAC cited to Illinois Supreme Court is, it says, yeah, catastrophic injury means post-employment career-ending. So I think that's the significance. And a line of duty injury is when the pension board says, yeah, your injury is career-ending. So it's a definitive point in time with that decision. Some other, like I said, IMRF departments, there may not be that. Well, it's a definitive point in time when the facts exist for the claim. I'm sorry, Justice? When the facts exist for the claim is a point in time when the statute begins to run, correct? I think it would be at the point in time that the individual known or should have known that he has a right to seek that benefit. Well, he did seek the benefit in a letter from his attorney, correct? Well, he requested it, but whether or not he had the actual legal right to receive it at that time was still a question. What authority do you have? What is the authority to make the argument that a decision by a review in court begins the time to file a claim? The decision of the review in court begins? No. Oh, I think it's when you know or should have known. And when the Illinois Supreme Court says, hey, the employer's obligation attaches at the time that it's a career-ending injury or the pension board awards, that certainly puts him on notice that he should have known at that point to file a lawsuit. And our contention is that was in 2011 when the NOAC case was decided. And as I mentioned, everyone admits that that's the first time when the benefit starts was decided by the court. Prior to that, it was reasonable for my client, the officer, to say they may be right. I'm not entitled to that benefit because my date of injury predated the act. I think the NOAC case made it crystal clear that that's not true. That would open up a busload of litigation on claims where people are uncertain as to whether or not the facts that they have form the basis of a cause of action. Are parties required to bring in action to test whether or not those facts support a claim? I don't think I would disagree with that, Judge. It's just a matter of whether or not you think you have a valid basis for bringing a claim and whether or not you're going to be risking sanctions or something of that nature if you don't have that reasonable basis. And certainly this was going to be a fight by the village starting in 2001. They weren't going to agree to these benefits. And if you read the correspondence back and forth from the attorneys back then, it was clear the village wasn't going to pay. They felt firmly that if the injury predates it, they're not entitled. And that's the same argument they brought to the circuit court and they're going to bring to Your Honor, saying the injury predates it. We don't have to pay. So as I said, I think it was certainly an open question then, and according to the appellee, it's still an open question. But I think NOAC made that crystal clear. The officer did bring his complaint after the NOAC case, certainly well within the two-year statute of limitations. And as far as the latches argument goes, I don't think the appellee even proved their right to assert latches. They didn't meet a prima facie case of latches, and certainly I think Justice Wheaton was correct in deciding that they didn't meet latches. One, they have to show prejudice. Just arguing that we didn't budget for it or we don't have the money, I don't think is enough. They didn't submit any evidence via affidavit, document, or otherwise to indicate that they were prejudiced in any way. In fact, they knew as early as 2001 that this was an officer that thought he might be entitled to the benefit. They said he wasn't entitled to back then. So if they didn't budget for it or they didn't consider that this may be a benefit that they'd have to pay out, that's on them. They can't necessarily blame the plaintiff, and they haven't, as I mentioned, shown any prejudice, either by document or otherwise, other than simply arguing it. So unless there's any other questions from the court, I would reserve any additional time. Then you'll have a chance for reply. Thank you. Thank you. May it please the court, counsel. My name is Charles Hervis, and I'm presenting on behalf of the village of Itasca. I'd like to make two observations briefly. The first is that the passage of time in this particular case between the injury and the pension, actually and the lawsuit, is 21 years. And it's been 12 years from the time of the pension awarded to the time that the lawsuit was filed. And that makes this a little bit unusual. And the second observation is that PSEBA itself is an unusual statute that provides a very large financial benefit to catastrophically injured public servants. The court should construe the ambiguity, if any, in the statute in favor of the employee local government that must pay the benefit. And that was one of the principles cited in the NOAC case. With those two observations, I'd like to turn my argument directly to the PSEBA statute and the NOAC case. And then I also want to make sure that I address Justice Burkett's question regarding the issue of the discovery rule and how a court opinion could create an additional right, because I think that the courts have addressed that issue. But let me turn specifically to the argument of the PSEBA statute. I think that's where we need to start. That's where the lower court started. The statute's very clear that the wording is, on or after the effective date, suffers a catastrophic injury. Everyone, I think, thought that was fairly clear. Maybe I'm being a little presumptuous by saying everyone, because in the NOAC case, there needed to be some clarification. And we'll talk about that. But if you look at the statute in and of itself, there is no question that the suffering of an injury, the catastrophic injury, was in this instance in 1992. The Pension Fund made that very clear, that they were awarding the line of disability pension based on the 1992 injury. And so we've made the distinction between the idea when the actual injury is suffered and when there is a determination as to when it is a catastrophic injury. Well, you're not questioning the fact that the officer was able to perform his regular duties after 1992 up until the time that he realized he could no longer grip a weapon, correct? That would be true. We are not questioning that. So, in fact, the injury was not catastrophic in the sense that he wasn't able to perform his regular duties. It was learned that he could not perform emergency type of duties in 2001, right? Actually, the record is not entirely clear on that because what was said in the plaintiff's complaint is that it wasn't until he found himself in an emergency situation and he had to remove his weapon from his holster that he realized that there was a problem with that. And so with that, he goes back, he sees the hand guy, and ultimately they decide that he cannot perform his duties. And so there is no question that it is declared catastrophic at the pension board level. And that's what NOAC tells us. I don't dispute that at all. But here's what I think is important for the court in understanding Itasca's argument. There really is an initial inquiry here as to whether someone qualifies to receive the PSEBA benefit under 10A. And so when we get to the NOAC case, we're going to understand that the court was actually deciding a different question than the qualification for PSEBA benefits. When the legislature passed PSEBA, I don't think there was any doubt that they said, well, this is the date, we're passing the law. It happened to be November, I think it was 14th, 1997. And if you suffer an injury, a catastrophic injury on or after this date, PSEBA applies. And so from the village's perspective, there was an injury. It was declared catastrophic after PSEBA was passed, no question about it. But the actual injury itself occurred in 1992. And so from a look at the statute, the village's position is that it doesn't. Doesn't a catastrophic injury also have to be career-ending? He clearly was able to go back to work until November following the car accident. That's true. That's true. How do we reconcile that? That's where I think you have to look at the NOAC case. And this is where I think, and I'll address Your Honor's question directly. NOAC posed the following question. When a police officer suffers a catastrophic injury in the line of duty, when does the officer's employer become statutorily obligated to pay the entire health insurance premium for the injured officer and his family? That's a direct quote from the Supreme Court initial analysis. That was the question they were presented. They were not presented with the question as to whether the officer was entitled to PSEBA. That is a completely different question. In the NOAC case, the parties all understood that Section 10A and Section 10B had been met and the officer was entitled to it. So the court said, we need to clarify for people when this benefit should be paid. Is it when he was actually injured or is it when the pension fund made the determination? And the court went into the analysis and said, we believe it is appropriate at the time that the catastrophic injury determination is made. That's when you have to start paying the benefit. Now, to address Justice Jorgensen's question, that analysis cannot be applied to the instance in which the legislature is trying to decide when this law is going to apply to an injured officer. And because the pension fund had made the determination that the injury occurred, it was suffered in 1992, our position is that that takes it outside of the ambit of the PSEBA statute. It was not intended by the legislature to cover individuals who had received an injury prior to that time. The reason this is different is that... Even though it became catastrophic at another point in time. It actually manifests itself to the point that he could not continue with his activity as a police officer. Great. That's one analysis, but how about this? Because of that car accident, that was the tipping point for the injury to his hand. Isn't that an issue of fact? That is a disputed fact in this instance, but I would argue as follows, that the doctor, and the record is clear that the doctor's deposition was taken, that that car accident had nothing to do with his injury to his hand. That it was a contusion to the hand. And secondly, and even more importantly, the car accident issue isn't something in terms of a cumulative injury. And NOAC talked about this. Let's say a firefighter or an officer falls, they have a back problem and they have several injuries to the back, and then the court was saying, well, it's difficult to know exactly when that injury occurred. That's one of the problems. And NOAC said, let's do it at the time that the pension fund decides that it's a catastrophic injury, because it's too hard to always determine when the actual injury occurs. But in this instance, we have a discrete injury that occurs in 1992, and the 2,000 injury from the car accident is not a contributing factor, and so we're bound by what the pension fund said in awarding that liability. How do we know that? How do we know that that car accident is not a contributing factor? Because the hand surgeon was deposed and testified. That it had nothing to do with it. That it had nothing to do with it, yes. I think that the record is very clear on that. That was one of the reasons we deposed the hand surgeon. So let me, I want to make sure I address the other issues, and let me just say that if the court were inclined to find that a plaintiff was qualified to receive PCEVA, the village did assert the statute of limitations and the lachie's defenses. What about the plaintiff's argument that you're barred from arguing statute of limitations because it didn't cross appeal? Well, actually, that was hit hard in the reply brief. So, you know, as a lawyer, you sit in your office, you get the reply brief, and you say to yourself, wow, did I do something wrong here? So I can assure you that I checked very carefully, and I will say, quite frankly, I was disappointed in counsel's argument because the case that he cites that supports his proposition that I had to cross appeal actually stands for the opposite proposition. I think that that, if I can use a colloquial term, was uncool. The court, as Justice Burke pointed out, very clear. I received all the relief that I had asked for. The case was dismissed. The case law says that it would be inappropriate for me to file a cross appeal. So I think hopefully the court understands, and I think that I still have that argument on appeal. I've now waived it. Well, so you confirm it on the basis of the record, correct? That's correct. And then directly to Justice Burkett's question, whether the NOAC case could somehow create the discovery rule, I would refer the court to an analogous type case, and that would be Doe v. Diocese of Dallas, and that's an Illinois Supreme Court case from 2009, where the Illinois Supreme Court said that a change in the statute of repose in a child sexual abuse case could not be used to revive a case that was previously banned under the statute of limitations. And so I would respectfully suggest that the NOAC decision is not an appropriate discovery rule device. And even though we didn't file a cross appeal, I would respectfully disagree with Judge Wheaton in the conclusion that she made in that determination. Really, the bottom line is that the statute of limitations, whether it's five years, which we think is the appropriate statute of limitations, because there was a 12-year delay, there is no conceivable statute of limitations that would apply that would save the day for the plaintiff in this matter. Is there any explanation in the record for why the village never responded to the letters that were written? No, I'm not aware of one. And actually, that's an issue of fact that would have to be looked at, I suppose, because it is conceivable that there was a phone call. It may not have been through a formal letter. The village realizes in 2001 he's pensioned out. He's no longer with the village. He's a pensioner. And the village denied the PSEBA benefits. Then two years later, a lawyer writes a letter and says, hey, you know what? The Crohe case was decided. We think that you guys should still pay PSEBA on this. I don't know why the village didn't make a formal response. And, in fact, I haven't even checked to see if there possibly was one that wasn't contained in the record. We never got to that point. I never felt that that was an important inquiry for resolution of this matter on the summary judgment before the lower court. All the facts were there, in your opinion, for the defendant to file a claim when he wrote the letter, when his counsel wrote the letter. Yes, all the facts were there. And, again, I don't have any answers to why the village didn't respond. I'm going to suggest that the village didn't really have an obligation to respond and that the failure to respond wasn't inappropriate in any way. With respect to the Lachey's argument, again, there's a delay of 12 years. I think that all I have to do is cite the municipal statutes dealing with appropriation ordinances and the requirement of the filing of those annual appropriation ordinances. And there is a good amount of case law that talks about municipal obligations in that way. This case would have a large financial impact on the village of Itasca to retroactively go back and require the payment of health insurance premiums for the last 12-plus years and then for the future. Obviously, the village could budget for it in the future, but it has long passed the idea of budgets over the last more than 10 years. And the idea of memories fading and things of that nature, it really has been a very long time. And I would respectfully assert that if the plaintiff believed he was entitled to proceed by 2003, he should have acted accordingly and not necessarily have waited for the Supreme Court to decide the NOAC case in which there was this epiphany that all of a sudden now, oh, wait a minute, now I want to go back and get the placebo benefits. He should not have sat on his rights. That concludes my oral presentation. We rely on our briefs unless there's questions. On the first issue, are you relying on the resolution of a fact question by the pension board as to when the catastrophic injury took place? I mean, the pension board ruled after placebo came into effect. They pointed back to the 92 shooting event. Yes. Are you relying on that to establish that's when the catastrophic injury took place? Yes. That finding? Yes. This is a separate action, is it not? I mean, placebo and the pension board are two separate actions, correct? Yes. Now, they're certainly related, and under Healand and all these cases, you know, they're related, but they're separate. So why can't the plaintiff in this case make his case factually regarding that instead of relying on the pension board's finding? I haven't reviewed this recently in preparation for this case, but my thought runs to the Richter case, which this court decided a few years ago. It was a placebo case out of Oak Brook, and that was the application of preclusion. And this finding that was made by the pension fund, I believe, would have a preclusive effect with respect to this litigation. And I'm doing this off the top of my head. Thank you. Thank you very much. Thank you very much. Do you wish to reply? I do. Counsel, maybe we could start with the last question. Does the factual finding by the pension board have a preclusive effect on your case? I don't think it does, Justice Clark, and the reason being in the Peterson case, which I think is also a second district case, as the municipality has a right to conduct its own hearing with respect to placebo. And here, they didn't do that. In fact, they just ignored the request for benefits back in 2003. And if they would have had their own hearing, they could have determined exactly what they felt was the catastrophic injury, whether it was suffered in 92, whether it was suffered in 2000. I don't think they are necessarily required to rely upon the pension board's determination on that issue. What I think they are required, though, to rely upon is that the pension board's determination is a career-ending injury. You sound a little bit like Justice McClaren's special writing in Heland, where he said exactly what you're saying. The city was locked out of the pension hearing. They never asked to intervene in the Rockford case. And why are they then being held to their feet to the fire on what is a catastrophic injury being equated to a liability disability when they weren't even at the table to fight that? And that's what your argument seems to be. Well, no, I think it's really two separate things. One under Section 10A is what is a catastrophic injury, and it's a once it's career-ending. So the pension board really makes that determination. Is the officer's disabling condition career-ending? They don't determine when that catastrophic injury was suffered, I guess, based on an argument that had predated the act. So I think we're really talking about a very specific legal issue in this case. Now that we're well beyond the effective date of the act, I don't think it ever will at this point. And as far as the NOAC case opening up a floodgate of litigation, at this point the five-year statute of limitations is done. So you're not going to have anyone coming forward and saying, hey, I was injured back in 2000. I think I have a right to file placebo now. That's just not going to happen because it's clear based on a five-year statute of limitations they can't bring the case. But here we did bring the case in an appropriate time under the statute of limitations. And we brought it within two years of the NOAC case. I just want to point out, I think counsel misspoke a bit about the facts in this case. On cross motions for summary judgment, we set forth the undisputed facts which were admitted. That's set forth in the record at C440 through 443. And I did indicate that he worked up until 2000, that those injuries in 2000 are what led to him having a career-ending injury, the catastrophic injury. Counsel comes before you and kind of makes the same argument. He says the injured was suffered in 2000. All he's doing is rewording the statute to leave out catastrophic. He's also suggesting that there was a deposition of the physician that treated him following, treated your client following the car accident and said, based on his opinion, that it had absolutely nothing to do with his inability to pull his weapon seven or eight months later. He said the injury of the car accident that was a cocteuse, the first injury in January of 2000, there was no causation to the condition that was in 1992. But what the Illinois Supreme Court says, it's under Section 10A, there is no causation issue to be determined. Is it a career-ending injury? If it is, as a matter of law, it's a catastrophic injury. So we don't need to get to whether or not there's causation between the 1992 injury and the 2000. And Judge Nagel didn't talk about, you know, the fact that he had to pull his weapon at the second call in 2000, as to that was when both the physicians and the officer himself and the department, for that matter, knew that there was a real problem at hand that would pose a safety hazard for Officer Hancock being on the job, rendering him disabled. So I think there is some degree of causative relationship between the 2000 injury, the second one in November, and the 1992 injury, because that's where the officer realizes and everyone realizes that he can't continue to perform the duties of the job because his hand isn't at full capacity and he can't continue to work as a police officer. And at that point, you believed you did not have a cause of action? In 2000? Well, I think certainly Officer Hancock's counsel at the time may have believed he had a cause of action. That's why he sent the letter in 2003. Well, you're stuck with that side. So at some point, someone made the decision to forego filing suit at that time. Yes, and I think we have to go back to what did the party reasonably believe? What did Mr. Officer Hancock reasonably believe at the time as to whether or not he had a valid cause of action? And as you heard, Counselor, everyone was telling him it's your day of injury that applies. Again, it wasn't until the NOAC case, as Counselor said when he came up here, that everyone agrees that case established when the employer was statutory obligated to pay. So in 2003, there still was no legislation that said an employer was statutory obligated to pay this benefit. So I think it's reasonable for the party, Officer Hancock, to have relied upon the employer's inaction or telling him in 2001 he doesn't have a cause of action until the NOAC case came out in 2011. So based on that, Justice, unless there's any questions. No questions. We'd ask that you reverse the decision of the circuit court as to the benefit being applicable after the effective date of the act. We ask you reverse that in favor of Officer Hancock. Thank you very much. Thank you very much. We are adjourned.